CHARLES H. WELLING CO. v. ZIEGLER et al.

(Circuit Court of Appeals, Second Circuit.  April 28, 1914.)

No. 251.

LANDLORD AND TENANT (§ 83*) — LEASE — RENEWAL — STIPULATIONS — CONSTRUCTION.

Pending a suit by tenants to enforce specific performance of a covenant to renew a lease, it was stipulated that if the suit should be determined adversely to the tenants, and it should ultimately be decided that they were not entitled to a renewal, except at the rate of $14,000 a year, and they failed to exercise their right of renewal, and for that reason lost it, they would quietly remove from the premises "at the expiration of 12 months from the service of a demand for such removal, and not before," continuing to pay rent at the rate of $1,166.66 per month in advance until the date they vacated the premises on such demand, and in consideration of the foregoing the landlord would waive all claims for damages, or double rent, against the tenants for holding over after February 1, 1908. The suit was decided in favor of the landlord July 12, 1909, and on July 13th following the tenants gave notice that they intended to vacate, and did vacate October 31st following, having paid rent in full up to that date at the rate of $14,000 per annum.  Held, that the stipulation should not be construed as an agreement that, in case of the tenants' failure to maintain their contention, they would remain and pay rent at the rate of $14,000 in perpetuity, unless the landlord exercised its right to terminate the tenancy by notice, but rather as securing to the tenants a year after the decision, during which they might occupy the premises on paying full rental, and then surrender the same without liability as a tenant holding over after the expiration of the term.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 263, 264, 266, 267, 269, 278, 295;  Dec. Dig. § 83.*]

In Error to the District Court of the United States for the Southern District of New York.

This cause comes here upon writ of error to review a judgment of the District Court, Southern District of New York, for $12,708.98 in favor of plaintiff in error, who was plaintiff below.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

C. A. Jayne, of New York City, for plaintiff in error.
J. B. Coleman, of New York City, for defendants in error.

Before LACOMBE, COXE and ROGERS, Circuit Judges.

LACOMBE, Circuit Judge. The defendants are executors of persons deceased, who, when living, constituted the firm of Sohmer & Co. Hereinafter the firm and present defendants will be referred to indifferently as Sohmer & Co., or defendants. So, too, the present plaintiff and its predecessor in title to the premises in question will be referred to indifferently as plaintiff or the Welling Company.

On November 16, 1897, plaintiff and defendants entered into a lease of 170 Fifth avenue for a term of ten years, expiring February, 1908. The rent stipulated for was $10,000 for the first three years, $12,000 for the second three years, and $14,000 for the last four of the term. The lease also gave defendants "the privilege of a further renewal for ten years on the same terms and conditions." A few months before the lease expired Sohmer & Co. gave notice to the Welling Company of their intention to renew the lease for another ten years, contending that the rent under the renewal lease should be $10,000 for first three years, $12,000 for next three years, and $14,000 for the balance of the term. The Welling Company refused to renew on these terms, contending that the lease gave Sohmer & Co. only a right to renewal at $14,000 for the entire term. Sohmer & Co. then brought suit for specific performance, viz., to require the Welling Company to execute a lease including the crescendo rental. At no time did Sohmer & Co. undertake to renew at $14,000 rental. As the event has shown, they preferred to vacate after the expiration of the original term rather than to continue occupying at $14,000.

To provide a modus vivendi, without disturbing the rights of either party during the pendency of this suit for specific performance, the parties to that suit entered into a written stipulation, which is the basis of the present action. They agreed that Sohmer & Co. should remain in possession until final determination of the suit, the provisional tenancy to be governed by the terms of the lease, except as to the monthly rent to be paid. This it was agreed should be $1,000 a month, with the proviso that, if the court should hold that Sohmer & Co. were correct in their contention as to the meaning of the original lease, the overpayment each month should be credited against future rentals. Of course, if they did prevail in the state court, there would be a renewal for ten years, and therefore there would be future rentals. If, however, the suit should result in a decision that Sohmer & Co. had no right to a renewal, except at $14,000 a year for the full term, then they should pay the difference between $1,000 a month and $1,166.66 a month for the period during which they had paid only $1,000 a month. The stipulation further contained the following provisions:

"It is further stipulated and agreed that if the determination of this suit shall be adverse to the plaintiffs and it shall ultimately be decided that they had no right of renewal of the said lease except upon the payment of an annual rental of fourteen thousand ($14,000) dollars a year, and that the plaintiffs failed accordingly to exercise their right of renewal of the said lease as therein provided and for that reason lost their right to renew, they will

quietly and peaceably remove from the said premises at the expiration of twelve (12) months from the service of a demand for such removal, and not before, they continue to pay rent at the rate of one thousand one hundred sixty-six and $^{66}/_{100}$ ($1,166.66) dollars per month in advance, as aforesaid, until the date of their vacatur of the premises upon said demand; and that in consideration of the foregoing the defendant will waive all claims for damages or double rental against the plaintiffs for holding over after February 1, 1908, upon their compliance with terms of this stipulation."

The state court suit was decided in favor of the Welling Company on July 12, 1909. On July 13, 1909, Sohmer & Co. gave notice that they intended to vacate, and did vacate October 31, 1909, having paid rent in full at the rate of $14,000 per annum to that date. The present action was begun June 26, 1912, to recover rent at $14,000 per annum, from October 31, 1909, to June 1, 1912, less certain offsets by way of rent received from others. The court decided that plaintiff was entitled to rent only for one year after July 13, 1909, the date when Sohmer & Co. gave notice of their intention to vacate. Dissatisfied with the amount of this recovery, plaintiff sued out this writ of error; defendants accepted the result, and have not sought to review it.

It will be noted that the sole question presented is the construction of the stipulation, because the claim for any rent at all rests solely on the stipulation; the original lease was never renewed by Sohmer & Co. exercising their option in conformity with its terms, since their offer to renew was coupled with a provision that they should pay less rent during the renewal period than the original lease provided. Manifestly this stipulation requires construction; it cannot be interpreted literally without producing a result so unreasonable that it cannot be accepted as the agreement of the parties. Literally interpreted, it would require defendants to remain in possession, paying $14,000 a year rent, in perpetuity, for the term is not to expire until one year after the Welling Company demand that Sohmer & Co. remove. Certainly no such meaning can be given to the stipulation.

In construing it we are to take into consideration the situation as it existed when the stipulation was entered into, and are to ascertain the meaning of the parties in the light of that situation. There is no controversy as to the evidential facts; the situation was as indicated above. Evidently Sohmer & Co. wanted to renew the lease for ten years, if they could get it at the lower rental; there is nothing to show that they were willing to take it at the higher rental. They were confident that their construction of the renewal provision of the new lease was correct, so confident that they went to the expense of a lawsuit to establish what they believed was their right. They realized, of course, that they might not prevail, and, if so, would have to vacate immediately premises with which their business had been associated for ten years and on which they had a large stock of pianos. Indeed, they might have to vacate before the suit would come to trial in order to escape the heavy obligations which fall upon one who holds over. It was for their interest to secure a reasonable period during which to effect vacatur, in the event of their not prevailing in their suit, and for that time they were willing to occupy and pay the higher rent. The structure of the clause in the stipulation indicates that it was framed

to secure them such protection, without their being put to the risk of paying double rent by a hold-over after February 1, 1908. Certainly there is nothing to indicate that, if no stipulation had been made, they would have held over. It is true that they did hold over more than four days before the stipulation was signed, but presumably negotiations for adjustment had well progressed before that time, and double-rent for four days, or even for a month, would not be a serious matter. It is to be remembered that if they had to vacate, because the Welling Company refused to renew, and some such modus vivendi had not been agreed to, and the state court should thereafter hold that Sohmer & Co. were entitled to renewal on the terms they had proposed, they might have an action for damages against the Welling Company for breach of contract.

The Welling Company, no doubt, was also confident of the result of the suit to construe the lease; but no one is ever sure of the result of a litigation. Under this stipulation, if it were defeated, the renewal for ten years on crescendo rental would go into effect, without any claim of damages against it for a broken contract. If it should succeed, it would have its full rental for the entire period of occupancy under the stipulation including the year after notice of vacatur; thus much at any rate would it obtain from a tenant who had refused to renew at all at the higher rate. The construction which the trial judge gave to the stipulation, securing a period of a year after decision in which the one side should occupy and the other should receive full rental, is a reasonable one, and as it seems to us fairly expresses what the parties seemingly intended. That in such a situation as then existed the one side required and the other side acquiesced in an agreement to remain in possession at the higher rental in perpetuity, unless the Welling Company, at any indefinite time in the future might terminate by notice, is a proposition to which we cannot accede. Nor do we find any warrant in the record for reading into the stipulation, before the words "until the date of their vacatur of the premises upon said demand," the words "for ten years from February 1, 1908," or "on the theory that the stipulation was concerned with a ten-year period or ten-year renewal." The stipulation was concerned with a provisional tenancy, with something which would be a substitute for the renewal, which the parties had failed to agree to and about which they were litigating.

The judgment is affirmed.